# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | 8:22CR147 |
| Plaintiff, | |
| vs. | ORDER<br>AND<br>FINDINGS AND<br>RECOMMENDATION |
| BALING N. DAT, | |
| Defendant. | |

This matter comes before the Court on Defendant Baling Dat's Pretrial Motions (Filing No. 56). Defendant requests: (1) discovery information about a "concerned citizen" who provided information to law enforcement; (2) to suppress evidence obtained from the search of his residence pursuant to a search warrant on the basis that the warrant was not supported by probable cause; and (3) a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) because the affidavit supporting the warrant knowingly and intentionally misrepresented (by commission and omission) known facts that would have defeated a finding of probable cause. (Filing No. 56). Defendant's motion is accompanied by a brief (Filing No. 57) and index of evidence (Filing No. 60) containing the challenged search warrant and affidavit and application. The government filed a brief (Filing No. 97) in opposition.

Because Defendant only challenges whether the affidavit contained sufficient probable cause to issue the search warrant for his residence, no evidentiary hearing is required, as that determination is made by reviewing the four corners of the warrant affidavit and application. See *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) ("[O]nly that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause."). Additionally, in order for a defendant to prevail on a request for a *Franks* hearing, the defendant must make a "substantial preliminary showing" that (1) the affiant "knowingly and intentionally" made reckless false statements or omissions and (2) if the false information is excised (or the omitted information is included), the affidavit no longer establishes probable cause. *United States v. Snyder*, 511 F.3d 813, 816 (8th Cir. 2008). The undersigned magistrate judge finds Defendant has not made such substantial preliminary showing, and therefore, a *Franks* hearing is also not warranted. As such, the matter is now fully submitted to

the Court. For the following reasons, the undersigned magistrate judge will deny Defendant's request for discovery regarding the concerned citizen, and recommend that Defendant's motion to suppress and for *Franks* hearing be denied.

## BACKGROUND

On January 21, 2022, a Douglas County County Court judge issued a no-knock search warrant for a single-family residence at 4704 Ellison Avenue, Omaha, Nebraska, based upon an application and affidavit by Omaha Police Department Officer David Ullery (Officer Ullery). The affidavit contained the following information:

> On January 21st 2022, Officer Nick SIDZYIK #1808 contacted a representitive [sic] of Omaha Public Power District and found that Thokat KUOTH is the party responsible for the utilities at 4704 Ellison Ave, Omaha, Douglas County, Nebraska. . . .
>
> Recent events among the TRIP SET Gang members have led to an on-going investigation by the Omaha Police Department. The on-going investigations include drug overdoses leading in death, drug sales, drug possession and violent crimes, to include shots fired, robberies, felony assaults and multiple recovered firearms.
>
> Recent NIBIN information (National Integrated Ballistic Information Network) which provides actionable investigative leads in a timely manner, have also assisted in the on-going investigations.
>
> Within the last thirty 30 days a concerned citizen stated that drugs were being sold and stored from 4704 Ellison Avenue, and firearms were within the residence of 4704 Ellison Avenue.
>
> The address of 4704 Ellison Avenue is part of this on-going investigation. Affiant Officer knows a resident, Goa DAT (11/25/1997) was the victim of a shooting in Lincoln, Nebraska on 10/30/2021. DAT passed away from his injuries. The DAT brothers, Dilang DAT (7/5/1993) Baling DAT (9/26/1996) and Det DAT (10/12/1994) all use 4704 Ellison Avenue as their primary residence. Since the homicide of Goa DAT there have been additional assaults and violent crimes related to his death, throughout Omaha and various cities in Nebraska. Baling DAT, Dilang DAT and Det DAT all [are] Nebraska convicted felons.
>
> > Baling DAT was convicted of an F2-Robbery Disposition date 9/22/2014
> > Dilang DAT was convicted of an F2-Robbery Disposition date 12/22/2014
> > Det DAT was convicted of an F2-Burglary Disposition date 4/27/2017

On January 21st, 2022 at 0520 hours Officer GALLOWAY #2034 went to the address of 4704 Ellison Ave and was able to retrieve two bags of trash that was sitting out front of 4704 Ellison Avenue, at the end of the driveway along Ellison Avenue. It should be noted that Friday is the regular day for trash pickup. GALLOWAY transported the trash bag to a secured location.

On January 21st 2022 at 0820 hours, Affiant Officer and Officer BRAUN #1957 searched the trash bags and located the following property.

> Item #1- suspected marijuana residue between two cups
> Item #2- Quantum Fiber mailer to the "current resident" at 4704 Ellison Avenue
> Item #3- Nebraska Medicine prescription information to Chudier LUL 11/19/94 at 4704 Ellison Ave
> Item #4- Clear partial baggie (zip lock style) that is ripped.
> Item #5- "4" 9 mm WIN LUGER bullets located inside of a tied black latex glove, inside of a second latex glove.

On January 21st 2022 at 1100 hours, Affiant Officer ULLERY #1845 transported Item #1 to the Nebraska Public Service Laboratory for testing. The evidentiary test resulted in, Item # 1 identified as cannabis with tetrahydrocannabinol (THC) present.

Based upon your Affiant's training and experience, along with research and conversations that your Affiant's had with other Law Enforcement Officers and/or reports that your Affiant's has read, your Affiant's know that parties involved in the manufacture and/or distribution illegal narcotics will coordinate sales via cellular telephones through phone calls, texting and even social media if the phone is so equipped. These parties will oftentimes store contact information, photographs, schedules and even videos in these same phones, computers and electronic storage devices. Affiant Officer's also know that these parties can be in possession of weapons to protect their investments and have been known to keep detailed records of sales and debts owed and can be in possession of money that is profited from the sale of the illegal narcotics.

Based upon your Affiant's training, experience, research and/or conversations that your Affiant had with other law enforcement officers and/or reports that your Affiant has read, your Affiant requests to search for and seize any weapons, spent casings, any miscellaneous gun/firearm pieces, ammunition, gun cleaning items or kits, holsters, ammunition belts, original box packaging materials, magazines, targets, expended pieces of lead/bullets, any photographs of firearms, or any paperwork showing the purchase, storage, disposition, and/or dominion and control over any guns, any ammunition, or any of the above items. Your Affiant believes that whether or not the firearm(s) sought are recovered, the above items would tend to show that a firearm(s) existed and may have once been located on a place to which the suspect had access, and that these items would tend to connect

3

the suspect with the weapon(s) sought. The above items are not normally disposed of after the commission of a crime, and they are therefore [sic] still likely to be found in any location or vehicles to be searched, and/or on the person of any suspect to be searched pursuant to this search warrant.

Based upon your Affiant's training, experience, reasearch [sic] and conversations that your Affiant had with other Law Enforcement Officers and/or reports that your Affiant has read, your Affiant knows from past experience and investigations that parties involved in the possession, illegal distribution, use and/or illegal manufacturing of controlled substances will often times discard paraphernalia, residue, venue, and/or drug records in their trash and then set this trash by the curb for normal trash pick-up.

Affiant Officer has reason to believe, and do believe, that if Officers of the Omaha Police Department are granted a court authorized search warrant for the address of 4 704 Ellison Ave, Omaha, Douglas County, Nebraska, Officers will obtain evidence for the offense of possession of a controlled substance and/or firearms violations, which is a violation of the state statutes of the State of Nebraska.

. . . [A] No Knock Search Warrant is requested because:

Due to the possible small amounts of narcotics being used at 4704 Ellison Ave, Omaha, Douglas County, Nebraska, Affiant Officer knows from past experience that if officers were to knock and announce their presence and purpose, the evidence being sought could easily be destroyed by flushing it down the toilet, sink and/or swallowing it.

Due to the fact that ammunition was discovered wrapped inside of latex gloves inside of the trash pull. It is reasonable [sic] to believe that firearms or evidence of firearms are inside of the residence.

Due to the DAT brothers being with the TRIP SET gang and Affiant Officers knowing how violent the TRIP SET gang is, along with recent violent crimes in the area to include multiple homicides, felony assaults and shots fired within the Trip Set gang.

Baling DAT is a convicted felon and has 32 IMS entries to include robberies and obstructing. Det DAT is a convicted felon and has 44 IMS entries to include burglary and robbery attempt. Dilang DAT is a convicted felon and has 45 IMS entries to include assault and robbery.

Additionally, during an investigation on 1/11/2018 at 4704 Ellison Avenue (search warrant) a black S & W MM9 handgun ser # LDJ0677, which was confirmed stolen, was located at the residence.

4

(Filing No. 60 at pp. 2-5).

Based upon the above affidavit, a search warrant for the residence at 4704 Ellison Avenue was issued by the county court judge on January 21, 2022. Omaha Police Department officers executed the warrant at 7:04 a.m. on January 26, 2022. (Filing No. 60 at p. 10). Officers recovered baggies of suspected marijuana, suspected cocaine, scales, ammunition and firearms, pink baggies, several thousands of dollars of U.S. currency, among other items, during the execution of the warrant at the residence. An Indictment was returned by a grand jury on June 14, 2022, charging Defendant and several other occupants of the residence with various drug and firearm crimes. (Filing No. 1).

Defendant has filed the present motion to challenge evidence obtained from the search of the residence pursuant to the warrant. (Filing No. 56). Defendant first requests additional discovery regarding the "concerned citizen" referenced in the warrant affidavit, specifically, the citizen's name, date the information was provided and what statements the citizen made, reports concerning the citizen's information, whether the citizen received remuneration for the information, whether law enforcement verified the reliability of the information, and whether the citizen had previously provided information to law enforcement. Defendant contends "[s]o many facts about the [concerned citizen] were absent from Ullery's affidavit that it was impossible for the county court judge to meaningfully gauge the reliability and significance of the [concerned citizen]'s statement(s) regarding alleged illegal drug and firearms activity at 4704 Ellison Ave." (Filing No. 57 at pp. 8-10).

Defendant also seeks suppression of evidence obtained pursuant to the search warrant, arguing the affidavit application contained insufficient probable cause due to the unidentified and uncorroborated information from the concerned citizen, stale information about a stolen weapon, vague and conclusory allegations "hinting at illegality," and absence of information connecting Defendant or the codefendants to drug trafficking or firearms at the residence. Defendant further asserts that the fact that officers waited five days to execute the warrant rendered the information in the warrant application stale. (Filing No. 57 at pp. 10-16).

Defendant also seeks a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), arguing that the warrant was issued upon a misleading application. Specifically, Defendant contends the warrant affidavit recklessly omitted the following material information: (1) the identity of, and information provided by, the concerned citizen, and his or her reliability; (2)

whether the concerned citizen provided information to law enforcement before, or after the trash pull; (3) the actual measured weight of the marijuana residue found from the trash pull; (4) that no fingerprints, DNA or other identifying characteristics were detected on the 4 bullets inside the latex gloves recovered from the trash pull; and (5) the fact that three of the occupants of the residence were able to legally possess ammunition and firearms and that one of them had recently made such a purchase at Cabela's. (Filing No. 57 at p. 21).

Finally, Defendant argues that the *Franks* violations noted above rendered the warrant affidavit so lacking in indicia of probable cause and so facially deficient that it was unreasonable for law enforcement officers to rely on it, such that the *Leon* good faith exception does not apply. (Filing No. 57 at pp. 22-25).

## ANALYSIS

### I.     Discovery Regarding the Concerned Citizen

Defendant requests additional discovery regarding the "concerned citizen" referenced in Officer Ullery's warrant affidavit, specifically, the citizen's name, date the information was provided and what statements the citizen made, reports concerning the citizen's information, whether the citizen received remuneration for the information, whether law enforcement verified the reliability of the information, and whether the citizen had previously provided information to law enforcement.

It is well-established that "the identity of a 'tipster' whose observations formed the basis for a search warrant but who is not a necessary witness to the facts is not subject to compulsion." *United States v. Hollis*, 245 F.3d 671, 674 (8th Cir. 2001)); see also, *United States v. Faulkner*, 826 F.3d 1139, 1147 (8th Cir. 2016) (finding disclosure of "mere tipster" CI was not required where CI provided "valuable initial information for the officers to obtain warrants from which evidence was gathered" but did not witness or participate in any of the charged offenses); *United States v. Lindsey*, 284 F.3d 874, 877 (8th Cir. 2002) ("[A] defendant's disclosure request will be denied where the information is sought only to attack an affidavit supporting the search warrant and there is no showing how the information would establish innocence."). "[T]he defendant bears the burden of demonstrating the need for disclosure." *United States v. Lapsley*, 334 F.3d 762, 763 (8th Cir. 2003) (citing *United States v. Wright*, 145 F.3d 972, 975 (8th Cir. 1998)).

Here, Defendant requests discovery regarding the concerned citizen referenced in the warrant affidavit. However, it is clear from reading the warrant affidavit that the "concerned citizen" is an anonymous tipster. The only reference to the concerned citizen in the warrant affidavit is the statement that, "Within the last thirty 30 days a concerned citizen stated that drugs were being sold and stored from 4704 Ellison Avenue, and firearms were within the residence of 4704 Ellison Avenue." The government confirms in its brief that the "concerned citizen" is not a confidential informant, the government does not anticipate calling the concerned citizen as a witness at trial, and the pending charges against Defendant are not premised upon information witnessed by or participated in by the concerned citizen. See *United States v. Bradley*, 924 F.3d 476, 482 (8th Cir. 2019) (finding disclosure was not required of the confidential informant and tipsters who provided information used by police to obtain warrants where they "did not witness, participate in, or provide evidence of [the defendant's] charged crimes."). Defendant has not met his burden to demonstrate the need for disclosures regarding the concerned citizen, and it is apparent that the Defendant only requests such information to attack the affidavit supporting the search warrant. See *Lindsey*, 284 F.3d at 877. Accordingly, the Court will deny Defendant's motion to the extent it seeks disclosure of the identity of the concerned citizen based upon his or her role in providing information supporting the warrant affidavit.

## II.   Probable Cause for the Search Warrant

Defendant seeks suppression of evidence obtained pursuant to the search warrant, arguing the affidavit application contained insufficient probable cause due to the unidentified and uncorroborated information from the concerned citizen, stale information about a stolen weapon, vague and conclusory allegations "hinting at illegality," and absence of information connecting Defendant or the codefendants to drug trafficking or firearms at the residence. Defendant further asserts that the fact that officers waited five days to execute the warrant rendered the information in the warrant application stale.

"Probable cause to issue a search warrant exists when an affidavit in support of the warrant sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched." *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007) (internal quotation marks omitted) (quoting *United States v. Davis*, 471 F.3d 938, 946 (8th Cir. 2006)); see also *United States v. Reed*, 921 F.3d 751, 757 (8th Cir.

7

2019) ("Probable cause exists when, viewing the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'") (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). When relying on an affidavit to establish probable cause, "the probable cause determination must be based upon only that information which is found within the four corners of the affidavit." *United States v. Stults*, 575 F.3d 834, 843 (8th Cir. 2009). "Search warrant [a]pplications and affidavits should be read with common sense and not in a grudging, hyper technical fashion." *United States v. Ryan*, 293 F.3d 1059, 1061 (8th Cir. 2002) (quotations and citations omitted). An issuing judge's determination of probable cause "should be paid great deference by reviewing courts." *United States v. Mutschelknaus*, 592 F.3d 826, 828 (8th Cir. 2010).

Defendant is correct that, on its own, the information from an anonymous "concerned citizen" that drugs were being sold and that firearms were present inside the residence at 4704 Ellison Avenue is insufficient to establish probable cause. See *United States v. Wells*, 223 F.3d 835, 839 (8th Cir. 2000) ("An anonymous tip, however, is insufficient in itself to support a finding of probable cause" without "suitable corroboration."). But, anonymous reports can create probable cause when it was corroborated with other reports or whereby police investigation provides corroborative information. See *United States v. Kent*, 531 F.3d 642, 648 (8th Cir. 2008*); United States v. Nieman*, 520 F.3d 834, 840 (8th Cir. 2008). Here, the warrant affidavit did not rely on an anonymous tip alone. Instead, law enforcement undertook further independent investigation by conducting a trash pull of trash left out for collection at 4704 Ellison Avenue. Inside the trash, officers recovered suspected marijuana residue (later confirmed by lab testing to be THC), a clear baggie, and 9mm Win Luger bullets inside of a tied black latex glove inside a second latex glove. Officers' recovery of both drugs and ammunition corroborated the concerned citizen's tip that drugs and firearms were present in the residence, thus tending to confirm the reliability of the concerned citizen's information. See *United States v. Nolen*, 536 F.3d 834, 840 (8th Cir. 2008) ("Independent verification occurs when the information (or aspects of it) is corroborated by the independent observations of police officers."); *United States v. Koons*, 300 F.3d 985, 991 (8th Cir. 2002) (finding officers' recovery of marijuana stems and plant material in the defendant's trash corroborated an informant's tip that the defendant was dealing drugs); *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993) (corroboration of tip creates "permissible inference that the informant is reliable").

8

Additionally, although Defendant attempts to downplay the significance of the recovery of marijuana residue and ammunition from the trash pull at 4704 Ellison Avenue, such finding clearly weighs heavily towards establishing probable cause to issue the search warrant for the residence. See, e.g., *United States v. Allebach*, 526 F.3d 385, 387 (8th Cir. 2008) (holding that "two plastic bags with cocaine residue, two corners torn from plastic bags, Brillo pads, [and] a film canister with white residue . . . were sufficient to establish probable cause that cocaine was being possessed and consumed in [the defendant's] residence"); *United States v. Seidel*, 677 F.3d 334, 338 (8th Cir. 2012) (quoting *United States v. Timley*, 443 F.3d 615, 624 (8th Cir. 2006)) ([I]n fact, 'our court appears close to a blanket exception holding that trash pulls, standing alone, provide probable cause for the issuance of a search warrant in all cases.'"). Officers' recovery of ammunition and marijuana residue from the trash pull, together with the information that three residents (all brothers) of 4704 Ellison Avenue are convicted felons with lengthy criminal histories, see *United States v. Sumpter*, 669 F.2d 1215, 1222 (8th Cir. 1982) (noting that an "individual's prior criminal activities and record have a bearing on the probable cause determination"); that the brothers are with the TRIP set gang, which gang officers were actively investigating for criminal activities including drug possession and sales and other violent assaults and crimes involving firearms; that a fourth brother had lived at the Ellison Avenue residence but was killed in a shooting the year before; that a stolen gun had been located at the residence during another investigation in 2018; together with the corroborated concerned citizen's tip that the residence was being used for drug and firearm activity; was sufficient to establish there was a fair probability that contraband or evidence of criminal activity would be found at the of 4704 Ellison Avenue residence.

Defendant also argues that the stolen firearm investigation was "stale" information that does not support probable cause, and the five day wait to execute the warrant also rendered the information in the affidavit stale. "A warrant becomes stale if the information supporting the warrant is not sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search." *United States v. Colbert*, 828 F.3d 718, 727 (8th Cir. 2016)). "We have no fixed formula for deciding when information has become stale, but we consider the nature of the crime being investigated and the property to be searched." *United States v. Nieman*, 520 F.3d 834, 839 (8th Cir. 2008) (internal quotation marks omitted) (quoting *United States v. Stevens*, 439 F.3d 983, 988 (8th Cir. 2006)). "In investigations of ongoing narcotic operations, intervals of weeks or months between the last

9

described act and the application for a warrant [does] not necessarily make the information stale." *United States v. Smith*, 266 F.3d 902, 905 (8th Cir. 2001) (alteration in original) (internal quotation marks omitted) (quoting *United States v. Formaro*, 152 F.3d 768, 771 (8th Cir. 1998)). "A lapse of time is least important when the suspected criminal activity is continuing in nature and when the property is not likely to be destroyed or dissipated." *United States v. Davis*, 867 F.3d 1021, 1028 (8th Cir. 2017) (internal quotation marks omitted).

The undersigned magistrate judge finds that the five-day delay in executing the search warrant did not render the warrant stale under the totality of the circumstances. Officers were investigating an ongoing narcotic operation at a residence occupied by known gang members and felons. Information from a concerned citizen regarding drug and firearms at the residence was provided "within 30 days" of the affidavit, and officers found marijuana residue and ammunition five days before the warrant was executed. The information regarding the stolen firearm investigation from 2018 is old and not critical to the finding of probable cause, but it does tend to suggest that the residence has in the past, and continued to be, associated with ongoing criminal activity such that the warrant did not become stale five days after its issuance. See, e.g., *United States v. Gibson*, 123 F.3d 1121, 1124–25 (8th Cir. 1997) (finding four-day delay in executing a search warrant did not render the warrant stale for ongoing drug activity).

Defendant further argues that the good faith exception does not apply because the affidavit was so lacking in indicia of probable cause and the warrant was so facially deficient such that no police officer could reasonably presume the warrant to be valid. An exception to the exclusionary rule applies where officers rely on a warrant in good faith. *United States v. Hessman*, 369 F.3d 1016, 1019 (8th Cir. 2004). "In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *United States v. Leon*, 468 U.S. 897, 920 (1984). "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008) (quoting *Leon*, 468 U.S. at 922 (1984).

Even assuming the warrant was invalid, the *Leon* good-faith exception would apply. There was no evidence or argument that the warrants contained any false statements that misled the issuing judge. Further, there is no evidence indicating the issuing judge abandoned his judicial

10

role when issuing the warrants. Also, as discussed above, the undersigned magistrate judge finds the affidavit provided probable cause to issue the warrant, but in any event, it was not entirely unreasonable for law enforcement to believe Officer Ullery's affidavit supplied the requisite probable cause based on the information he possessed at the time. Finally, the warrant was not so facially deficient that no law enforcement officer could reasonably interpret is as valid. Accordingly, the undersigned magistrate judge concludes that law enforcement acted reasonably and in good faith in relying on the warrant issued in this case.

### III.    Defendant's Request for *Franks* Hearing

Defendant argues he is entitled to a *Franks* hearing because material facts were intentionally or recklessly omitted from the warrant application.

A criminal defendant may request a hearing to challenge a search warrant on the ground that the supporting affidavit contains factual misrepresentations or omissions relevant to the probable cause determination. See *Franks*, 438 U.S. at 155-56. In order for a defendant to prevail on a request for a *Franks* hearing, the defendant must make a "substantial preliminary showing" that (1) the affiant "knowingly and intentionally" made reckless false statements or omissions and (2) if the false information is excised (or the omitted information is included), the affidavit no longer establishes probable cause. *United States v. Snyder*, 511 F.3d 813, 816 (8th Cir. 2008). A defendant must show "by a preponderance of the evidence that an affidavit including [the omitted] information could not support a finding of probable cause." *United States v. Miller*, 11 F.4th 944, 952-53 (8th Cir. 2021). "The requirement of a substantial preliminary showing is not lightly met[.]" *United States v. Arnold*, 725 F.3d 896, 898 (8th Cir. 2013) (quoting *United States v. Mathison*, 157 F.3d 541, 548 (8th Cir. 1998)).

Defendant identifies the following material and critical facts were recklessly omitted from the warrant affidavit:

- The name of the concerned citizen, his/her reliability, foundation for the information the concerned citizen gave to law enforcement, and when that information was provided.
- Whether the concerned citizen provided information to law enforcement before, or after the trash pull.
- The infinitesimally small weight of the marijuana residue found on two plastic cups in the trash pull.

11

- No fingerprints, DNA or other identifying characteristics were detected on the 4 bullets inside a glove found during the trash pull.
- Three of the residents at 4704 Ellison Ave. were able to legally possess ammunition and firearms and one of them, Jany Jock, had recently made such a purchase at Cabela's.

(Filing No. 57 at pp. 17-19).

None of the above deficiencies cited by Defendant would have been "clearly critical" to the finding of probable cause to issue the search warrant. See *United States v. Conant*, 799 F.3d 1195, 1200 (8th Cir. 2015) ("Recklessness, . . . may be inferred from the fact of omission of information from an affidavit . . . when the material omitted would have been clearly critical to the finding of probable cause."). As explained further above, the details regarding the identity of the concerned citizen is not critical to the finding of probable cause because he or she was not a participant or witness to the charged crimes and the information he or she provided was corroborated by independent police investigation. As to the amount of marijuana found in the trash pull—the affidavit included the information that marijuana "residue" was found—the exact amount of that residue is immaterial. The fact that no fingerprints were found on the ammunition and a non-felon resident legally does not change the fact that three felons did live in the residence and would be prohibited from possessing—constructively or actually—firearms and ammunition. Defendant's cited omissions are not material or "clearly critical" to the finding of probable cause. In consideration of the above, the undersigned magistrate judge finds that Defendant has not made a "substantial preliminary showing" pursuant to *Franks*, and thus recommends his motion be denied.

Upon consideration,

**IT IS ORDERED** that Defendant Baling Dat's Pretrial Motions (Filing No. 56) be denied to the extent it requests discovery related to the "concerned citizen."

**IT IS HEREBY RECOMMENDED** to Brian C. Buescher, United States District Court Judge, that Defendant Baling Dat's Pretrial Motions (Filing No. 56) be denied in all other respects.

Dated this 18th day of January, 2023.

BY THE COURT:

s/Michael D. Nelson
United States Magistrate Judge

## ADMONITION

Pursuant to NECrimR 59.2, any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.