IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br> vs.<br><br>BALING N. DAT, DILANG N. DAT, and JANY G. JOCK<br><br>   Defendants. | **NO. 8:22-CR-147**<br><br><br>**MEMORANDUM AND ORDER ON PRETRIAL MOTIONS** |

  The United States has charged defendants Baling N. Dat, Dilang N. Dat, and Jany G. Jock (Defendants) with various crimes, including possession with the intent to distribute cocaine, the "knowing[ ] use and carry [of] firearms . . . during and in relation to, and . . . in furtherance of, a drug trafficking crime," possession of a firearm by a felon, and unlawful transfer of a firearm to a known felon. Filing 1.[1] Presently before the Court are several motions in limine seeking to admit or exclude numerous categories of evidence. Specifically, the Court has received three Motions in Limine from defendant Dilang N. Dat, Filing 251; Filing 267; Filing 282, two Motions in Limine from defendant Baling N. Dat, Filing 288; Filing 292, two Motions in Limine from defendant Jany G. Jock, Filing 301; Filing 305, and one Motion in Limine from the United States, Filing 297. Defendant Baling Dat has also filed a Motion to Enlarge Time to File a Pretrial Motion, with that pretrial motion being a Motion to Sever. Filing 286. Further, defendant Jock has filed a Motion to Quash Subpoena, with regard to a subpoena issued to him by codefendant Dilang Dat. For the reasons discussed below, the Court grants the Government's Motion in Limine and denies

---

[1] Defendants were indicted alongside codefendant Bumatet Duop, who is no longer part of this case. Filing 1.

Defendants' Motions in Limine. In addition, defendant Baling Dat's Motion to Enlarge Time, Filing 286, is denied because the underlying Motion to Sever is meritless. Finally, defendant Jock's Motion to Quash Subpoena, Filing 312, is granted.

## I.  INTRODUCTION

### A.  Factual Background

Between the various motions, the parties have all provided factual backgrounds which are largely consistent with each other. On January 21, 2022, Omaha Police Department (OPD) Officer Dave Ullery obtained a no-knock search warrant for 4704 Ellison Avenue, Omaha, Nebraska. Filing 252 at 2. The warrant authorized a search for illegal narcotics, weapons, and ammunition, among other things. Filing 252 at 2. The warrant application indicated that two of the defendants in this case, Baling and Dilang Dat, resided at this address and were affiliated with the Trip Set gang. Filing 252 at 3. Officer Ullery indicated that grounds for issuing the search warrant included suspected criminal activity by the "Trip Set" gang, such as drug sales, violent crimes, shots fired, robberies, and assaults. Filing 252 at 3. Other grounds included a ballistic report, a previously executed search warrant that uncovered a stolen firearm, a concerned citizen's report, and the then-recent death of the brother of the Dat Defendants. Filing 252 at 3–4.

In executing the search warrant, OPD encountered six adults and one child in various rooms throughout the house. Filing 252 at 4. OPD located five firearms, ammunition, and cocaine in the house, and arrested Defendants. Filing 252 at 5. OPD also found in the house documentation for multiple firearms purchases. Filing 252 at 5. Law enforcement officers later extracted data from defendant Dilang Dat's and defendant Jock's phones, which revealed photographs of the firearms and communications between Defendants about the firearms. Filing 279 at 4–7. Further

governmental investigation revealed that while defendant Baling Dat was in prison several years prior, he and defendant Jock exchanged communications on several occasions. Filing 297 at 7.

### B. Procedural Background

Defendants were indicted on June 14, 2022. Filing 1. Counts I–III are against Baling Dat and charge possession with intent to distribute cocaine, the "knowing[ ] use and carry [of] firearms . . . during and in relation to, and . . . in furtherance of, a drug trafficking crime," and felon in possession of a firearm. Filing 1. Count IV charges Dilang Dat with felon in possession of a firearm. Filing 1. Count VI charges Jany Jock with unlawful transfer of a firearm to a known felon. Filing 1.[2] Trial in this case is set to begin on Tuesday, August 20, 2024. Presently before the Court are a motion to enlarge time to file a motion to sever, a motion to quash subpoena, and numerous motions in limine.

## II. MOTION TO ENLARGE TIME TO FILE A MOTION TO SEVER

Defendant Baling Dat has moved for an order "reopening and enlarging the time to file" a motion to sever. Filing 286.[3] This Motion is effectively an out-of-time request for a continuance to file a Motion to Sever. Filing 286 at 1. Baling Dat has also included his proposed Motion to Sever, Filing 286-1, and a brief in support, Filing 286-2. The basis for the defendant's Motion is his concern that essential evidence against codefendant Jock would unfairly prejudice Baling Dat. Filing 286-2 at 1–2. Here, the Court will deny the defendant's motion because the underlying Motion to Sever is futile. *See United States v. Torres-Rosa*, 209 F.3d 4, 10 (1st Cir. 2000) (finding "the district court did not abuse its discretion in refusing to grant a continuance for the purpose of filing what would have been a futile motion").

---

[2] Count V pertained to codefendant Bumatet Duop, who is no longer part of this case.

[3] Defendant Baling Dat's request for a hearing, Filing 286-1, is denied.

"Continuances generally are not favored and should be granted only when the party requesting one has shown a compelling reason," *United States v. Jones*, 643 F.3d 275, 277 (8th Cir. 2011), and the Court has "wide latitude" to deny continuances, *United States v. Flynn*, 969 F.3d 873, 881 (8th Cir. 2020). Severance under Rule 14 is only appropriate where "consolidation [of multiple defendants] for trial [would] prejudice [the moving] defendant." Federal Rule of Evidence 14(a). Severance is appropriate "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). The defendant bears the burden to demonstrate "real prejudice" from a joint trial. *See United States v. Davis*, 534 F.3d 903, 916 (8th Cir. 2008). "Only in an unusual case will any prejudice resulting from the ability of a jury to separate evidence be substantial enough to outweigh the general efficiency of joinder." *United States v. Martin*, 777 F.3d 984, 995 (8th Cir. 2015). "[R]eal prejudice" may occur where, in a separate trial, "it is likely [a] co-defendant actually would have testified and that this testimony would have been exculpatory." *United States v. Mickelson*, 378 F.3d 810, 818 (8th Cir. 2004).

Severance in this case is inappropriate because Baling Dat will not suffer "real prejudice" by having a trial alongside his codefendants. *Davis*, 534 F.3d 903, 916. Defendant Baling Dat's fear of prejudice stems from the Government's intention to present "evidence of Mr. Jock's knowledge of Baling Dat's felony conviction [a]s an essential element of the government's case against Mr. Jock." Filing 286-2 at 1. The Government plans to show that Jock communicated with Baling Dat while Dat was incarcerated, thereby establishing Jock's scienter of Dat's status as a felon. Filing 297 at 12. Dat's argument that he will suffer "real prejudice" due to the jury's knowledge of his prior term of incarceration is unavailing. As Dat acknowledges, he "has entered

4

an *Old Chief* Stipulation for th[e] prior felony." Filing 286-2 at 1 (citing Filing 260 (*Old Chief* Stipulation)).[4] Thus, the Government cannot present evidence about "the name or nature of the prior offense" for which Dat was previously convicted. *Old Chief v. United States*, 519 U.S. 172, 174 (1997) (preventing courts from "spurn[ing a defendant's offer to concede the fact of the prior conviction] and admit[ting] the full record of a prior judgment, when the name or nature of the prior offense raises the risk of a verdict tainted by improper considerations, and when the purpose of the evidence is solely to prove the element of prior conviction"); *see also United States v. Richardson*, 40 F.4th 858, 866 (8th Cir. 2022) (providing that "if a defendant is willing to stipulate to his prior felony conviction, the district court must keep evidence of the name and nature of the conviction out of the record" (citation omitted)).

Moreover, the fact that Dat was previously convicted of a crime is a necessary element of the Government's case against him. *See* Filing 1 at 2 (charging the defendant with possession of a firearm by a person "knowing he had been convicted of a crime punishable by imprisonment for a term exceeding one year"). The only additional evidence that the jury would learn about Dat that it would not learn if the parties were severed is that Dat served a term of incarceration after being convicted of a felony, which is likely common sense. Accordingly, this information would not cause Dat to suffer "real prejudice." *Davis*, 534 F.3d at 916. In addition, Dat nowhere suggests that his codefendant Jock "actually would have testified and that this testimony would have been exculpatory" of Baling Dat if severance occurred. *Mickelson*, 378 F.3d at 818; *see generally* Filing

---

[4] The Government indicates that "Baling N. Dat has not [yet] provided the Government with a proposed written stipulation regarding his prior felony conviction," although "he has indicated his intent to enter into an '*Old Chief* Stipulation.'" Filing 330 at 15. The Court assumes for the purposes of ruling on this argument that Baling Dat will abide by his Notice and "stipulate, pursuant to *Old Chief v. United States*, 519 U.S. 172, 190-92 (1971), as to his felony status and his knowledge of his felony status."

286-2. "Severance is not mandated simply because a codefendant might testify and thereby only 'increase the chances of acquittal or tend to rebut some aspect of the government's case.'" *United States v. Foote*, 920 F.2d 1395, 1400 (8th Cir. 1990) (citation omitted). Thus, the underlying Motion to Sever is meritless, rendering the Motion to Enlarge Time futile. Accordingly, Baling Dat's Motion to Enlarge Time is denied.

### III. JOCK'S MOTION TO QUASH SUBPOENA

Defendant Jock submitted a Motion to Quash Subpoena, in which he argues that a subpoena from codefendant Dilang Dat should be quashed because Jock cannot be compelled to testify at his own trial. Filing 312. In addition, Jock indicated in his motion in limine that "[t]he parties are in possession of an affidavit [purportedly authored] by an individual named Jany Jock. The [parties] should be precluded from submitting it at trial as it violates Fed.R. Evid 401, 402, 403, 404(b), 803 and 900." Filing 302 at 23. Because the issues of whether Jock can be compelled to testify in this trial and whether his affidavit is admissible are interrelated, the Court will address these issues together.

It appears that Jock signed this affidavit in the Douglas County District Court on July 14, 2022, one month after Defendants were indicted in this Court. The affidavit states the following:

1.1.    On or about 06-09-2021 I was issued a permit to purchase by authorizing me to purchase weapons under local and state law.

1 .2.    On or about 07-31-2021 I purchased my first weapon. Since then I've purchased a number of weapons lawfully.

2.1.    On or about 01-24-2022 Nyot Pan visited me at my residence at (4704 Ellison Ave, Omaha, NE) in Douglas County, Nebraska. PAN and I had plans to visit an indoor shooting range for target practice for sport. I proceeded to give my firearms thorough cleaning considering the range. Pan left early to attend a family matter. I asked him to leave his weapon with me because I intended on going to the indoor shooting range for target practice. He agreed.

3. 1.   On or about 01-26-2022 the Omaha Police Department executed a no knock search warrant at my residence. When the 5 firearm weapons were found and seized four out of six adults were arrested including myself. A child was placed in child protective custody. Please note I am related to my roommates. Four out of the Five weapons were in my possession and care in the home. Out of 3 Firearms Belong to me 1 Belongs to Pan, the last firearm belonged to another guest at the home during the search.

4.1.    On or about 01-31-20221 I was released from custody. I went to the Omaha Police Department Headquarters in efforts to obtain my property and weapon. I was denied and informed that a hold was placed on my property and weapons considered as evidence in an ongoing investigation. Later I was provided with my phone. Im still waiting on the return of property and weapons.

5.1.    I am requesting the return of my property and weapons. I am available to answer any questions in order to clarify this mistake or misunderstanding which has unfairly impacted my relatives and roommates by the presence of my weapons in the home.

Filing 253-6 ([sic] throughout). It further appears that Jock signed this affidavit in the presence of a notary witness. Filing 253-6.

Defendants Baling and Dilang Dat contend that this affidavit "has undeniable probative value to [their] defenses." Filing 252 at 25; Filing 293 at 31. Both contend it constitutes "exculpatory evidence." Filing 252 at 25; Filing 293 at 31. These defendants further acknowledge that "given that the Government is proceeding against Baling, Dilang, and Jock in a joint trial, it is unlikely that the Court will allow [Bilang or] Dilang to call Jock as a witness at trial to establish foundation for the Affidavit or to testify regarding the Affidavit's contents." Filing 252 at 25–26; Filing 293 at 31. However, these defendants argue that "the Court should permit [them] to offer the 'Affidavit of Jany Jock' into evidence" in place of Jock's subpoenaed testimony. The Court agrees with the Dat Defendants.

Jock undeniably has a Fifth Amendment right "to refuse to testify against himself at a criminal trial in which he is a defendant." *Vega v. Tekoh*, 597 U.S. 134, 141 (2022) (citation

7

omitted). This right is "absolute." *Salinas v. Texas*, 570 U.S. 178, 184 (2013). Further, the jury should not be made aware that a defendant is invoking his right to refuse to testify against himself. *See United States v. Perez*, 29 F.4th 975, 988 (8th Cir. 2022) ("It is well established that 'the Fifth Amendment . . . forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt.'" (quoting *Griffin v. California*, 380 U.S. 609, 615 (1965))). The Dat Defendants correctly acknowledge that they cannot force defendant Jock to testify at his own criminal trial. Thus, Jock's Motion to Quash Subpoena, Filing 312, is granted.

However, the Fifth Amendment privilege against self-incrimination only bars "the introduction [at trial] against a criminal defendant of out-of-court statements *obtained by compulsion*." *Vega*, 597 U.S. at 141 (emphasis added). Defendant Jock has not indicated that these out-of-court statements in the affidavit were involuntary. *See generally* Filing 253-6; Filing 302; Filing 312. Indeed, Jock's affidavit declarations were made under penalty of perjury and in the presence of a notary witness. Filing 253-6. The Court further notes that Jock's Motion in Limine states that the affidavit should be excluded "as it violates Fed. R. Evid 401, 402, 403, 404(b), 803 and 900." Filing 302 at 23. Defendant Jock provides no additional argument for exclusion of the affidavit under the Federal Rules of Evidence. The Court is "not obliged to consider this perfunctorily raised, undeveloped argument[.]" *In re Vera T. Welte Testamentary Tr.*, 96 F.4th 1034, 1039 (8th Cir. 2024) (quoting *United States v. Kirk*, 528 F.3d 1102, 1104 n.2 (8th Cir. 2008)); *see also United States v. Pacheco-Poo*, 952 F.3d 950, 953–54 (8th Cir. 2020) (arguments were waived when the proponent did not "cite any case nor detail any facts for th[e] argument"). Thus, at this point, the Court does not see any legal impediment to admission of Jock's affidavit. However, the parties will have to properly offer such affidavit, including meeting any procedural requirements for admission.

8

# IV. MOTIONS IN LIMINE

"The court must decide any preliminary question about whether . . . evidence is admissible." Fed. R. Evid. 104. "Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Motions in limine "serve as a gatekeeping function that permits a trial judge to exclude or eliminate inadmissible evidence submissions that ought not be presented to a jury." *McGuire v. Cooper*, No. 16-4, 2018 WL 3935053, at *1 (D. Neb. Aug. 16, 2018) (citing *Jonasson v. Lutheran Child & Fam. Services*, 115 F.3d. 436, 440 (7th Cir. 1997)). The opposite is also true, permitting district courts to determine that evidence is admissible before trial. *See United States v. Haig*, 365 F. Supp. 3d 1101, 1105 (D. Nev. 2019) ("Motions in limine may be used to exclude or admit evidence in advance of trial.").

Because the three Defendants have each filed multiple motions in limine, and because Defendants' challenged categories of evidence are largely—although not completely—overlapping, the Court will deal with Defendants' evidentiary objections collectively. Unless otherwise specified, the rulings in this Order apply to all Defendants equally.

## A. Defendants' Timeliness Challenges

### 1. *Challenged Witnesses and the Parties' Arguments*

Defendants object to several witnesses and exhibits on the grounds of untimeliness.[5] First, Defendants contend that the testimony of two experts—Mellissa Helligso, manager of the University of Nebraska Medical Center Human DNA Identification Laboratory and forensic DNA

---

[5] Defendants' requests for a hearing on these issues, *see, e.g.,* Filing 305, are denied.

analyst, and Frank Feden, Drug Enforcement Administration Special Agent—is inadmissible due to untimely disclosure under NECrimR 16.1(a)(3) and Fed. R. Crim. P. 16(a)(1)(G). Filing 288; Filing 305. Notably, Defendants have only challenged these expert witnesses because of the alleged untimeliness of their disclosure and not due to any substantive inadequacy of their disclosures or qualifications. Filing 288; Filing 305. Defendants argue that the remedy for the alleged procedural violation regarding the expert witnesses is exclusion of the expert testimony. *See* Filing 289 at 3. Second, Defendants contend that 23 witnesses disclosed by the Government in its Proposed Witness List, Filing 268, were similarly untimely under NECrimR 16.1(a)(3) and Fed. R. Crim. P. 16(a)(1)(E). Filing 282. Defendants similarly argue that the remedy for the procedural violation regarding the other witnesses is for the Court to "prohibit the Government from adducing any evidence from the [untimely-disclosed] individuals against [Defendants] at trial." Filing 289 at 3. Third, Defendants challenge some categories of exhibit evidence as untimely, such as the "Nebraska Department of Correctional Services" material. Filing 283 at 6. For example, Defendants explain that the Government only furnished Defendants with a copy of Baling Dat's "Inmate Movement" on August 6, 2024, despite the record reflecting events that occurred from October 1, 2014, to April 8, 2018. Filing 283 at 6–7.

The Government has provided explanations about the August 6, 2024, disclosures. Filing 330. Regarding Ms. Helligso, the Government states that "Defendants have been aware of [her] since August 15, 2022 when the Government turned over discovery" because "Helligso's DNA Report, dated February 16, 2022, was part of that discovery submission." Filing 330 at 8 (citing Filing 32). To the extent that the Government had only recently furnished Defendants with material related to Ms. Helligso's expected testimony, such as the "DNA disclosure book," the Government explains that this material was "only requested and disclosed in the weeks leading up to trial, not

as a matter of general discovery." Regarding SA Feden, the Government states that because "this is a *firearms and drug* case[,] . . . [i]t stands to reason that an expert would be called to testify about such matters, especially in a case as complex as this one." Filing 330 at 9 (emphasis in original). Accordingly, the Government appears to acknowledge that there was no prior notice of SA Feden. However, the Government contends that "[t]here is no surprise here" that a firearms and drug expert would be called. Filing 330 at 9. Regarding the "Nebraska Department of Correctional Service records," the Government states that these records were "obtained by the Government in the afternoon of August 1, 2024, and disclosed to Defendants on August 2, 2024." Filing 330 at 9. The Government further states, "Any suggestion by Defendants that the Government had these materials in its possession prior to August 1, 2024, is without merit. There have been no discovery violations on the part of the Government." Filing 330 at 10. Finally, the Government contends that it was not required to provide a list of non-expert witnesses to Defendants as part of the discovery requirements, but in any case, the names of many of these witnesses could have been ascertained from discovery materials previously provided to Defendants. Filing 330 at 12–13.

  2. *Rule 16(a) Standards*

Federal Rule of Criminal Procedure 16(a)(1)(G) governs the disclosure of expert witnesses by the Government. The Rule provides,

> At the defendant's request, the government must disclose to the defendant, in writing, the information required by (iii) for any testimony that the government intends to use at trial under Federal Rule of Evidence 702, 703, or 705 during its case-in-chief.
>
> . . .

> The court, by order or local rule, must set a time for the government to make its disclosures. The time must be sufficiently before trial to provide a fair opportunity for the defendant to meet the government's evidence.

Federal Rule of Criminal Procedure 16(a)(1)(G). A local rule, NECrimR 16.1(a)(3), specifies the timing requirements for governmental disclosure of expert witnesses, stating that "the government must provide discovery under this rule no sooner than 2 but not later than 14 days after the arraignment." The Federal Rules of Criminal Procedure further impose a "continuing duty to disclose" on the government, requiring the government to "supplement or correct its disclosures.

Fed. R. Crim. P. 16(a)(1)(G)(vi); 16(c). However, the party asserting an opponent's failure to comply based on untimely disclosure "under Rule 16(a)(1)(G) must demonstrate prejudice[.]" *United States v. Buchanan*, 604 F.3d 517, 526 (8th Cir. 2010) (citation omitted). Moreover, "[a] claim of prejudice based on untimely disclosure is less convincing when unaccompanied by an objection to the object of that disclosure." *Id.* In contrast, Rule 16(a) does not expressly require the disclosure of any governmental non-expert witnesses. *See United States v. W.R. Grace*, 526 F.3d 499, 510 (9th Cir. 2008) (noting that "Rule 16 does not expressly mandate the disclosure of nonexpert witnesses").

Regarding other types of evidence, Federal Rule of Criminal Procedure 16(a)(1)(E) provides that the government must "permit the defendant[s] to inspect and to copy or photograph" any documents and object "if the item is within the government's possession, custody, or control" in certain circumstances. The circumstances relevant here are either "(i) the item is material to preparing the defense; [or] (ii) the government intends to use the item in its case-in-chief at trial[.]" Fed. R. Crim. P. 16(a)(1)(E).

Finally, Federal Rule of Criminal Procedure 16(d)(2) provides the Court with remedies for a party's failure to comply with the Rule. Rule 16(d)(2) provides,

(2) *Failure to Comply*. If a party fails to comply with this rule, the court may:

> (A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions;
>
> (B) grant a continuance;
>
> (C) prohibit that party from introducing the undisclosed evidence; or
>
> (D) enter any other order that is just under the circumstances.

Federal Rule of Criminal Procedure 16(d)(2).

*3.  Application*

Defendants requested discovery material pursuant to Federal Rule of Criminal Procedure 16. *See* Filing 12; Filing 18; Filing 136 (Text Orders entered after Defendants' arraignments). The Dats requested discovery material in August 2022, and Jock requested discovery material in March 2023. Even assuming that the Government's August 2024 disclosures of expert witnesses, non-expert witnesses, and other evidence is untimely under NECrimR 16.1 and Fed. R. Crim. P. 16, this evidence will not be subject to exclusion for untimeliness.[6]

Defendants have not sufficiently "demonstrate[d] prejudice" due to the untimely disclosure. *Buchanan*, 604 F.3d at 526. Importantly, Defendants have not issued a substantive "objection to the object[s] of [the Government's disclosure[s]." *Id.* Defendants have not objected to the expert testimony on any grounds besides timeliness, *i.e.*, on the basis that the disclosure was inadequate under Rule 16(a)(1)(G)(iii) or that experts are unqualified under Federal Rule of Evidence 702.[7] In addition, the Government made the disclosure two weeks before the start of trial, which was sufficient time for the defense to prepare. *See United States v. Bull*, 8 F.4th 762,

---

[6] Although this evidence will not be excluded, the Court reserves the authority to inquire further about the Government's reasons for the alleged delay in making these disclosures.

[7] The Court expresses no opinion as to the adequacy of the disclosure under Rule 16(a)(1)(G)(iii) or the qualification of the experts under Federal Rule of Evidence 702.

768 (8th Cir. 2021) (finding no abuse of discretion where the district court permitted the government to introduce calls that it obtained three and nine weeks before trial but provided only ten days before trial (citing *United States v. Hyles*, 479 F.3d 958, 963–64, 967 (8th Cir. 2007))). Moreover, Defendants "do[ ] not point to anything specific that would have been done if not for the late arrival" of the expert witness disclosures. *Hyles*, 479 F.3d at 968. Under these circumstances, the Court concludes that Defendants have "failed to show actual prejudice," *id.*, and the Government's disclosure was "sufficiently before trial to provide a fair opportunity for the defendant to meet the government's evidence." Fed. R. Crim. P. 16(a)(1)(G)(ii).

Moreover, for the same reason that Defendants' timeliness challenge to the expert witnesses fails, Defendants' timeliness challenges to the non-expert witnesses and to the recently-disclosed exhibits, including the "Nebraska Department of Correctional Services" material, also fail: Defendants have not shown "actual prejudice." *Hyles*, 479 F.3d at 968. Thus, to the extent that Defendants' motions in limine challenge the Government's witnesses and any exhibit for untimely disclosure, Defendants' motions are denied.

### B.  Substantive Evidentiary Rulings

The Government's Motion in Limine focuses on three categories of evidence: gang membership; Baling Dat's prior incarceration; and firearms and ammunition. After explaining the relevant evidentiary standards, the Court will analyze the Government's Motion in Limine before turning to Defendants' various motions. Cumulatively, Defendants have challenged in their motions in limine over thirty categories of evidence on substantive evidentiary grounds, as follows:

1.  Gang-related evidence;

2.  NIBIN Information; (National Integrated Ballistic Information Network)

3.  Concerned Citizen's Report;

4.  Prior Search Warrant;

5.  Information regarding Goa Dat;

6.  An Assault, Robbery, and Shots Fired [report] associated with Codefendant Bumatet G. Duop;

7.  Information from [Defendants'] Cellular Telephones;

8.  Dilang N. Dat's Immigration Status;

9.  Dilang N. Dat's Prior Conviction; and,

10. DDAT BATES 496-503 (pdf) – OPD report RB# AR17605;

11. Inmate records - Nebraska Department of Corrections on Baling DAT (Sept 2014-July 2018) in native format (no BATES);

12. Visitation Records.pdf;

13. All Sender.pdf;

14. Baling Dat All.xlsx;

15. janygj email.xlsx;

16. PanList (2).pdf;

17. Payment.pdf; and

18. RadGridExport.pdf,

19. Baling N. Dat's Immigration Status;

20. Baling N. Dat's Prior Conviction;

21. Inmate Movement_Baling_BATES 504.pdf;

22. #4163 11/22/2021 Picture of Baling DAT holding a Glock pistol in a vehicle;

23. #3479 11/19/2021 video of JOCK, Baling DAT and unknown black male;

24. #2824 Picture of Glock G22 dated 7/8/2021;

25. #3095 unknown male holding two pistols 11/6/2021;

26. #3696 10/6/2021 Picture of 3 Glock pistols including a Glock 43;

15

27. #4672 10/26/20 Picture of Tan rifle with magazine at a person's feet;

28. #5358 Picture of Sig Sauer pistol on black cloth;

29. #7395 11/12/2021 Picture of tan/silver/black pistol next to magazine on a piece of cloth;

30. Any drug related photos;

31. Any alleged communications between unknown individuals and Jock contained on his phone; and

32. Purported Google Searches involving the search term straw purchase.

*See* Filing 251; Filing 267; Filing 288; Filing 301 (language drawn from Defendants' motions; consolidated and renumbered by the Court for convenience). The Court notes that Defendants did not include copies of the challenged categories of evidence with their motions in limine. Rather, Defendants appear to reference discovery files that are not on the record, or that are not titled in a way consistently with exhibits provided by the parties. Accordingly, the Court relies on the parties' characterization of the challenged evidence in ruling on Defendants' motions in limine.

    1. *Evidentiary Standards*

        a.  Rules 401, 402, and 403

Defendants challenge several categories of evidence as irrelevant, or if relevant, as excludable because its probative value is substantially outweighed by its negative effects. Federal Rule of Evidence 401 provides, "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." "The threshold for relevance is 'quite minimal.'" *United States v. Holmes*, 413 F.3d 770, 773 (8th Cir. 2005). Federal Rule of Evidence 402 provides that irrelevant evidence is inadmissible.

16

Rule 403 provides, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "Unfair prejudice means an undue tendency to suggest decision on an improper basis, including evidence which is so inflammatory on its face as to divert the jury's attention from the material issues in the trial." *United States v. Redd*, 81 F.4th 822, 828 (8th Cir. 2023) (citation omitted), *cert. denied*, 144 S. Ct. 866 (2024). The Eighth Circuit "afford[s] great deference to a district court's balancing under Rule 403 'of the probative value and prejudicial impact of the evidence.'" *Id.*

### b.   Res Gestae or Intrinsic Evidence

The Government asserts in its Motion in Limine that gang-related evidence, evidence of Baling Dat's prior incarceration, and evidence of firearms and ammunition is res gestae in this case. *See generally* Filing 297. "Intrinsic evidence" or res gestae "'tends logically to prove any element of the crime charged,' and is 'admissible as an integral part of the immediate context of the crime charged.'" *United States v. Dunn*, 76 F.4th 1062, 1067 (8th Cir. 2023) (citation omitted); *see also United States v. Parks*, 902 F.3d 805, 813 (8th Cir. 2018) ("*Res gestae*, also known as intrinsic evidence, is 'evidence of wrongful conduct other than the conduct at issue . . . offered for the purpose of providing the context in which the charged crime occurred.'" (citation omitted)). "Evidence of other wrongful conduct is considered intrinsic when it is offered for the purpose of providing the context in which the charged crime occurred." *United States v. Mink*, 9 F.4th 590, 607 (8th Cir. 2021) (citation omitted). "This evidence is admissible because it 'completes the story or provides a total picture of the charged crime.'" *Id.* (quoting *United States v. Big Eagle*, 702 F.3d 1125 (8th Cir. 2013)). The Eighth Circuit has stated that intrinsic evidence

includes both evidence that is inextricably intertwined with the crime charged as well as evidence that merely completes the story or provides context to the charged crime. Intrinsic evidence need not be necessary to the jury's understanding of the issues to be admissible.

. . .

District courts have broad discretion in admitting intrinsic evidence and we will reverse only if such evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts.

*United States v. Guzman*, 926 F.3d 991, 999–1000 (8th Cir. 2019) (alterations, citations, and quotations omitted). Moreover, evidence of other conduct can be intrinsic even if it is not the same conduct as the charged crime. *See United States v. Smith*, 4 F.4th 679, 684–85 (8th Cir. 2021) (evidence that the defendant possessed firearms and trafficked synthetic marijuana was intrinsic to his charge for distribution of methamphetamine); *United States v. Thomas*, 760 F.3d 879, 884 (8th Cir. 2014) ("crack-distribution evidence constituted intrinsic evidence" to the charged crime of distribution of heroin). In addition, Rule 403 standards apply to intrinsic evidence. *Guzman*, 926 F.3d at 1000.

### c. Rule 404(b)

The Government relies on Rule 404(b) as an alternative basis to admit gang-related evidence, evidence of Baling Dat's prior term of incarceration, and evidence of firearms and ammunition. *See generally* Filing 297. Rule 404(b)(1) states the general rule that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," *i.e.*, to show propensity. However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). To be admissible under Rule 404(b), evidence must be "(1) relevant to a material issue, (2) similar in kind and not overly remote in time to the crime charged,

18

(3) supported by sufficient evidence to support a jury finding that the defendant committed the prior act, and (4) of probative value not substantially outweighed by its prejudicial effect." *United States v. Proto*, 91 F.4th 929, 932 (8th Cir. 2024) (citing *United States v. Monds*, 945 F.3d 1049, 1052 (8th Cir. 2019)).

The Supreme Court has stated, "In the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Huddleston v. United States*, 485 U.S. 681, 689 (1988). Because "the relevance of evidence depends on whether a fact exists," namely, whether the defendant committed the act or acts at issue, "proof must be introduced sufficient to support a finding that the fact does exist." Fed. R. Evid. 104(b). "In determining whether the Government has introduced sufficient evidence to meet Rule 104(b), the trial court neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence." *Huddleston*, 485 U.S. at 690. "The court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact . . . by a preponderance of the evidence." *Id.*

   2. *Gang-Related Evidence Is Admissible as Res Gestae*

      a.   The Parties' Arguments

In its Motion in Limine, the United States argues that evidence showing Defendants' membership in the "Trip Set Gang" is "inextricably intertwined res gestae" evidence. Filing 297 at 10. The Government contends,

> [T]estimony pertaining to the defendants' 'Trip Set' gang membership and their own text messages and images about 'Trip Set' gang associations with 'Trip Set' gang members will provide context to the jury for B. Dat and D. Dat's motive to possess firearms, intent to possess firearms, knowledge of firearms and how to use them, and absence of mistake, and not for propensity."

Filing 297 at 11. The Government argues that the death of the Dat Defendants' brother, named Goa Dat, in a gang-related incident, is included within what the government describes as res gestae evidence. Filing 297 at 11. In addition, as related to Jock, the Government argues that "images from Jock's own phone of him displaying 'Trip Set' gang hand signs will show Jock's own motive to transfer firearms to fellow 'Trip Set' gang members." Filing 297 at 11.

Defendants seek to prohibit the government from entering evidence that Defendants are gang members and evidence about the gang more generally.[8] Defendants argue,

The Court should prohibit the Government from adducing any evidence that

> 1. TRIP SET Gang members have led to an on-going investigation by Omaha Police Department; that the ongoing investigations include drug overdoses leading to death, drug sales, drug possession and violent crimes, to include shots fired, robberies, felony assaults and multiple recovered firearms;
>
> 2. the Omaha Police Department knows how violent the TRIP SET gang is, along with recent violent crimes in the area to include multiple homicides, felony assaults and shots fired within the Trip Set gang; and
>
> 3. [Defendants are] with the TRIP SET gang.

Filing 252 at 7–8. In support of this, Defendants argue that there is no evidence connecting Defendants to the Trip Set gang's purported criminal activity, nor any evidence connecting the Trip Set gang's purported criminal activities to the crimes attributed to Defendants in the present case. Filing 252 at 8. In other words, Defendants argue that evidence about the Trip Set gang is not probative of Defendants' culpability for the charged crimes. Defendants further argue that the

---

[8] These arguments come from defendant Dilang's brief supporting his First Motion in Limine, Filing 252. Defendant Baling's arguments are nearly identical to Dilang's, changing little more than the name of the defendant and the charged weapon. *See* Filing 283. Defendant Jock's arguments do not augment those made by the other defendants. *See* Filing 302 at 17. Thus, the Court will consider Dilang's arguments on behalf of all Defendants.

jury could improperly use this information about the Trip Set gang as propensity evidence that Defendants committed the charged crime. Filing 252 at 9.

   b. Applicable Standards

   Typically, "the circumstances and background of a criminal charge[,] . . . the context in which the crime occurred, . . . the events immediately preceding the defendant's arrest, . . . as well as the circumstances of the arrest itself," constitute res gestae or intrinsic evidence. *United States v. LaDue*, 561 F.3d 855, 857–58 (8th Cir. 2009) (citations omitted). Specifically in the context of gang-related evidence, the Eighth Circuit in *Dunn* determined that gang-related evidence was res gestae where "the government was required to prove that [the defendant] knowingly possessed a firearm" and "the gang evidence explained why [he] would have done so." 76 F.4th at 1067. In other words, the gang-related evidence was inextricably related to the Government's theory of the defendant's culpability, as "gang evidence [ ] tended to make it more likely that [the defendant] possessed the firearm." *Id.* Because the defendant's previous possession of the firearm was relevant to the defendant's knowing possession of the gun at the time of the defendant's arrest, "the gang evidence was intrinsic to the crime charged." *Id.* Discussing the admissibility of gang-related activity more generally, the Eighth Circuit stated,

> Gang-related evidence is often admissible where the defendant is a gang member himself, the issues in the case concern the mere fact of a defendant's gang membership rather than sanctioning a wide ranging inquiry into the generic criminality and violent dispositions of gangs, and the evidence is generally an unavoidable incident of presenting other permissible evidence.

*United States v. Gaines*, 859 F.3d 1128, 1131 (8th Cir. 2017) (cleaned up).

   In addition, exclusion of gang-related evidence under Rule 403 is not warranted where evidence of "gang membership was relevant to a disputed issue [and] its primary effect was not to prejudice [the defendant] unfairly by showing association with unsavory characters." *Dunn*, 76

F.4th at 1067. The Eighth Circuit has also attributed "significant probative value to" gang-related evidence where "it served to clarify the connections between some of the defendants." *United States v. Johnson*, 28 F.3d 1487, 1497–98 (8th Cir. 1994). The Eighth Circuit will only reverse a district court's determination on this issue "when such evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts." *United States v. Shelledy*, 961 F.3d 1014, 1020–21 (8th Cir. 2020) (citation omitted).

c.    Application

In this case, the Government may introduce gang-related evidence to the extent "it provides context as to why the investigation began, why [Defendants] reside together, and why they share firearms and/or ammunition." Filing 297 at 10. This gang-related evidence against Defendants is intrinsic because it "tends logically to prove any element of the crime charged," *Dunn*, 76 F.4th at 1067, and "is generally an unavoidable incident of presenting other permissible evidence," *Gaines*, 859 F.3d at 1131. In other words, Defendants' affiliation with the Trip Set gang is necessary to the Government's theory of Defendants' culpability. The present case is like *Dunn* because here too the Government is "required to prove that [the Dat Defendants] knowingly possessed [ ] firearm[s]" in their home and "the gang evidence explained why they would have done so." 76 F.4th at 1067. Similarly, the Government is required to prove that Jock knowingly transferred a firearm to Baling Dat, and "the gang evidence explain[s] why [Jock] would have done so." *Id.*; *see also Johnson*, 28 F.3d at 1497–98 (finding "significant probative value [in gang-related testimony [that] served to clarify the connections between some of the defendants"). In addition, evidence that relates to "the circumstances and background of a criminal charge[,] . . . the context in which

the crime occurred, . . . the events immediately preceding the defendant's arrest, . . . as well as the circumstances of the arrest itself," *LaDue*, 561 F.3d at 857–58, is admissible as intrinsic evidence.[9]

The Government does not have unlimited leeway to introduce gang-related activity, however. Rule 403 standards still apply to gang-related intrinsic evidence. *Guzman*, 926 F.3d at 1000. As stated by the Eighth Circuit, to be admissible, "gang membership [must be] relevant to a disputed issue [and] its primary effect [must not be] to prejudice [Defendants] unfairly by showing association with unsavory characters." *Dunn*, 76 F.4th at 1067. However, the gang-related evidence will likely be admissible at trial so long as the Government honors its representation that "introduction of 'Trip Set' gang membership will not be a highlight of the case, but rather will be generic and fleeting to establish a common motive, intent, and absence of mistake. It will not be offered to show propensity." Filing 297 at 11–12. The Court will give an appropriate instruction to minimize any potential prejudice of the proposed evidence. *See United States v. Proto*, 91 F.4th 929, 932 (8th Cir. 2024) (noting that "'the jury is expected to follow instructions in limiting this evidence to its proper function,' and 'limiting instructions on this subject are no more difficult to comprehend or apply than those upon various other subjects'" (quoting *Spencer v. Texas*, 385 U.S. 554, 562-63 (1967))).

The Court's conclusion that gang-related evidence is admissible as res gestae affects a number of Defendants' challenged categories of evidence. Much of the challenged gang-related evidence appears to be comprised of the challenged photographs and digital communications,[10]

---

[9] This would encompass evidence such as the "Concerned Citizen's Report," which the Government has indicated that it plans to introduce to demonstrate "the basis for the type of warrant (no knock), tactics used (SWAT Team), and for providing additional context to the search." Filing 330 at 14.

[10] Defendant Baling Dat suggests that evidence of text messages in the context of showing gang membership would be subject to hearsay rules. Filing 326 at 5. The Court disagrees. Text message evidence in this context, unless offered for inappropriate reasons, could properly show the Defendants' relationships with each other without seeking

including photographs of gang signs and fellow gang members, and messages exchanged between gang members. To the extent this evidence is relevant to any element of the crimes charged and not merely "a wide ranging inquiry into the generic criminality and violent dispositions of gangs," *Gaines*, 859 F.3d at 1131, this evidence is admissible as res gestae, subject to Rule 403 balancing.

### 3. *Evidence of Baling Dat's Prior Incarceration Is Res Gestae*

As discussed in relation to Baling Dat's Motion to Sever, the nature of the conviction that led to his prior incarceration is not admissible because he has submitted an *Old Chief* Stipulation to his status as a convicted felon. Filing 260; *Richardson*, 40 F.4th at 866 (providing that "if a defendant is willing to stipulate to his prior felony conviction, the district court must keep evidence of the name and nature of the conviction out of the record"). Rather, the Government seeks to offer evidence of Baling Dat's prior incarceration as "inextricably intertwined with Jock's offense conduct because it directly relates to Jock's knowledge of B. Dat's prior conviction when Jock transferred him a firearm." Filing 297 at 12.[11] This is an essential element of the crime with which Jock has been charged. Filing 1 (charging Jock with "knowingly transferr[ing] a firearm" to Baling Dat "knowing and having reasonable cause to believe that" Baling Dat was a convicted felon). The Government explains that it seeks to present evidence that defendants Jock and Baling Dat communicated while Dat was incarcerated, thereby showing that Jock knew that Dat was a convicted felon. Filing 297 at 12. The Government further argues that evidence of Dat's prior

---

"to prove the truth of the matter asserted" in the messages. Federal Rule of Evidence 801(c). Use of Defendants' text messages for other purposes could implicate hearsay rules.

[11] The Government does not indicate that it seeks to introduce evidence of defendant Dilang Dat's former incarceration. *See generally* Filing 297. As with defendant Baling Dat, an element of the crime with which defendant Dilang Dat is being charged requires demonstrating that he knew he was a convicted felon at the time of the offense. *See* Filing 1. Defendant Dilang Dat also entered an *Old Chief* Stipulation. Filing 254. However, unlike defendant Baling Dat, defendant Dilang Dat's prior term of incarceration is immaterial to any of the charges, including that against defendant Jock.

incarceration is not unduly prejudicial under Rule 403, and "[a]ny prejudice that may result to B. Dat can be cured with a limiting instruction." Filing 297 at 13. The Court agrees with the Government.

Because the Government must prove that Jock knew that Baling Dat was a convicted felon when Jock transferred the weapon, evidence showing that Jock communicated with Dat while he was incarcerated is res gestae because it "tends logically to prove [that] element of the crime charged." *Dunn*, 76 F.4th at 1067. In addition, Rule 403 does not favor excluding this evidence. Evidence that "serve[s] to clarify the connections between some of the defendants" can have "significant probative value." *Johnson*, 28 F.3d 1497–98. This is especially true here, where the Government must prove that Jock knew about Baling Dat's status as a felon. In addition, this evidence is not unduly prejudicial under Rule 403. The jury will be instructed about the parties' stipulation that Baling Dat is a convicted felon. There is little reason to think evidence that Baling Dat was once incarcerated would be "so inflammatory on its face as to divert the jury's attention from the material issues in the trial." *Redd*, 81 F.4th at 828. Thus, evidence of Baling Dat's prior term of incarceration is admissible as res gestae, and Rule 403 does not warrant exclusion.

### 4. Evidence of Firearms and Ammunition

#### a. The Parties' Arguments

The Government argues that "evidence of B. Dat and D. Dat's firearm possession preceding the timeframe alleged in the Indictment, as well as Jock's transfer of firearms to others" is res gestae evidence. Filing 297 at 9. The Government explains that this evidence "directly relates to ongoing possession and transfer offenses alleged in the Indictment." Filing 297 at 9. The Government argues in the alternative that this evidence is admissible under Rule 404(b) as "motive

25

to possess [or transfer] firearms, intent to possess [or transfer] firearms, knowledge of firearms and how to use them, and absence of mistake, and not for propensity." Filing 297 at 9.

Defendants contend that such evidence is not res gestae, arguing that intrinsic evidence should be limited to "the time, place, and circumstances of the search at 4704 Ellison Ave. on January 26th, 2022." Filing 326 at 2. Defendants argue that "[t]he evidence which the Government seeks to admit against Baling happened months and years before the search of 4704 Ellison and in no way arose directly from or was part of the operative facts of the search of 4704 Ellison Ave. on January 26, 2022." Filing 326 at 2 (cleaned up). Defendants further argue that "the legal issue in dispute is" possession of "*specific*" firearms and "*not* whether [Defendants] possessed firearms 'consistent with'" the charged firearms "or possessed firearms generally." Filing 334 at 6. Defendants challenge as inadmissible several categories of evidence implicated by the Government's Motion in Limine, including pictures of various firearms and of Defendants holding firearms. *See* Filing 251; Filing 267; Filing 288; Filing 301.

   b.  Applicable Standards

Typically, res gestae includes "the circumstances and background of a criminal charge[,] . . . the context in which the crime occurred, . . . the events immediately preceding the defendant's arrest, . . . as well as the circumstances of the arrest itself." *United States v. LaDue*, 561 F.3d 855, 857–58 (8th Cir. 2009) (citations omitted). In the context of possession of a firearm, the Eighth Circuit has explained,

> When evidence of other crimes tends logically to prove any element of the crime charged it is admissible as an integral part of the immediate context of the crime charged and is not extrinsic and therefore is not governed by Rule 404(b).
>
> . . .

The government can prove knowing possession by showing actual or constructive possession, and possession can be sole or joint. Constructive possession is established if the person has dominion over the premises where the firearm is located, or control, ownership, or dominion over the firearm itself. Mere physical proximity to a firearm is not enough to show constructive possession, but knowledge of a firearm's presence, combined with control is constructive possession. As a jury rarely has direct evidence of a defendant's knowledge of a firearm's presence, knowledge is generally established through circumstantial evidence. Prior possession of a firearm is directly relevant to proving later possession of that same weapon because it helps establish ownership or control of the weapon. Limited evidence of a prior crime committed by the defendant with the same firearm may be admitted in a felon-in-possession case because it is highly probative of the defendant's possession of that weapon.

. . .

Since this [type of] evidence tend[s] logically to prove an element of the crime charged, it [i]s direct [or intrinsic] evidence and [i]s not subject to Rule 404(b).

*United States v. Battle*, 774 F.3d 504, 511 (8th Cir. 2014) (citations and quotations omitted, cleaned up, and alterations added). Thus, evidence of prior possession of a firearm is necessarily intrinsic evidence as to "later possession *of that same weapon*." *Id.* (emphasis added). Prior possession of a different firearm is only intrinsic to the extent it "complete[s] the story or provide[s] context to th[e charged] crime." *United States v. Guzman*, 926 F.3d 991, 1000 (8th Cir. 2019)

    c.  Application

The Court concludes that evidence of prior possession of firearms is admissible as res gestae against Defendants. In the materials provided to the Court by the Government, Filing 298, there appear to be several pieces of evidence showing that Defendants had prior possession of the same firearms that they are now being charged with unlawfully possessing or transferring. Regarding Baling Dat, Government Exhibit 14, Filing 298-14, purports to show a photograph of him holding a Glock 23, which is the same weapon he is charged with possessing. *See* Filing 1 (charging Baling Dat with felon in possession of a Glock 23). This certainly constitutes intrinsic evidence, as "[p]rior possession of a firearm is directly relevant to proving later possession of that

same weapon because it helps establish ownership or control of the weapon." *Dunn*, 76 F.4th at 1067 (citation omitted).

The evidence against the other two defendants is also res gestae, but the analysis is less straightforward. Although there are no photographs of the remaining two defendants physically holding any firearm they are charged with possessing or transferring, there is nonetheless res gestae evidence against them. Regarding Dilang Dat, Government Exhibit 24 purports to show an image extracted from Dilang Dat's phone of a Ruger 57, Filing 298-24, which the Government states is "consistent with that which was seized in this case," Filing 297 at 6, and consistent with the possession charge against Dilang Dat. *See* Filing 1 (charging Dilang Dat with unlawful possession of a Ruger 57). Unlike Baling Dat, Dilang Dat is not physically holding the weapon in this image. Filing 298-24. However, this is still evidence of "prior possession of a firearm." *Dunn*, 76 F.4th at 1067. "As a jury rarely has direct evidence of a defendant's knowledge of a firearm's presence, knowledge is generally established through circumstantial evidence," which includes evidence of "actual or constructive" or "sole or joint" possession, or even "dominion over the premises where the firearm is located, or control, ownership, or dominion over the firearm itself." *Battle*, 774 F.3d at 511. The fact that Dilang Dat has pictures on his phone of the weapon he is charged with possessing is intrinsic evidence of his unlawful possession.

Finally, regarding Jock, an image extracted from his phone from October 6, 2021, shows the Glock 23 that he is charged with unlawfully transferring to Baling Dat. Filing 298-13. In addition, the Government has evidence pertaining to Jock's apparently lawful purchase of this weapon from Cabela's on July 31, 2021. Filing 298-9. As with Dilang Dat, the absence of any photographs depicting Jock physically holding the charged weapon is not dispositive, but it is instead intrinsic evidence of his unlawful possession. Because Jock's possession of the charged

weapon bears on whether he unlawfully transferred the weapon to Baling Dat, this too constitutes intrinsic evidence of the charged crime.

Of course, res gestae evidence is still subject to Rule 403 balancing. *Guzman*, 926 F.3d at 1000. As to Jock, there is little in the way of prejudice. Jock's possession of the Glock 23 is not alleged to be unlawful; rather, he is only charged with unlawful transfer of the firearm to a known felon. Filing 1. Thus, the probative value of this evidence against Jock is not "substantially outweighed" by any of the other Rule 403 factors. Conversely, the Dat Defendants have more claim to prejudice by this evidence, given that in 2021 (the dates the above-described photographs were purportedly taken) it was also unlawful for them to possess firearms, in light of their then-existing statuses as felons. See Filing 1 (indicating that the Baling and Dilang Dat were convicted of felonies in 2014 and 2016, respectively). However, the Eighth Circuit stated, "Limited evidence of a prior crime committed by the defendant with the same firearm may be admitted in a felon-in-possession case because it is highly probative of the defendant's possession of that weapon." *Battle*, 774 F.3d at 511 (emphasis added). Accordingly, the potential for "unfair prejudice" does not "substantially outweigh[ ]" the "highly probative" value of this res gestae evidence against the Dat Defendants.

To the extent the government seeks to admit evidence of Defendants' prior possession of weapons that Defendants are not currently being charged with unlawfully possessing or transferring, this evidence can also be considered intrinsic to the extent it "complete[s] the story or provide[s] context to th[e charged] crime." *Guzman*, 926 F.3d at 1000 (holding that "the district court did not abuse its discretion in admitting as intrinsic evidence the references to [the defendant's] involvement with marijuana and two firearms" where the defendant was charged with a methamphetamine-related conspiracy); *see also United States v. White*, No. 13-440, 2014 WL

29

12923335, at *2 (W.D. Mo. July 14, 2014) (where the defendant was charged with illegally possessing one firearm, admitting three uncharged firearms as "intrinsic evidence which is inextricably intertwined as an integral part of the immediate context of the crime charged" (quoting *United States v. Rolett*, 151 F.3d 787, 790 (8th Cir. 1998))). Thus, evidence showing Defendants' possession of uncharged weapons may also be considered intrinsic, but the Government must demonstrate at trial that the evidence "bear[s] on the case and [is not] introduced solely to prove the defendant's propensity to commit criminal acts." *Guzman*, 926 F.3d at 1000.

    5.  *Defendants' Challenged Categories of Evidence*

    Defendants' substantive challenges to the challenged categories of evidence assert that the evidence is irrelevant, or if relevant, as excludable because its probative value is substantially outweighed by its negative effects. Except to the extent that the Government indicates it does not plan to introduce certain categories of evidence at trial, the Government contends that all of the challenged evidence can be used substantively as res gestae or intrinsic evidence. Filing 330 at 13–15. The Court agrees with the Government.

    Several of Defendants' objections to challenged categories of evidence are overruled as moot because the Government has indicated it does not intend to offer such evidence. These categories include NIBIN (National Integrated Ballistic Information Network) Information; an assault, robbery, and shots fired report associated with codefendant Bumatet G. Duop; the immigration statuses of the Dat Defendants; and the prior convictions of the Dat Defendants. Filing 330 at 13–15.

    Defendants' remaining objections to challenged categories of evidence are overruled because they can be used as res gestae evidence. Simply stated, like the evidence implicated by the Government's Motion in Limine, Defendants' challenged categories of evidence are

30

admissible to show "the circumstances and background of a criminal charge[,] . . . the context in which the crime occurred, . . . the events immediately preceding the defendant's arrest, . . . as well as the circumstances of the arrest itself." *LaDue, 561 F.3d 855, 857–58 (8th Cir. 2009)*. Accordingly, because the Court overrules all Defendants' objections to the challenged categories of evidence, Defendants' Motions in Limine are denied. However, if Defendants believe the Government is using the challenged evidence at trial for a non-res gestae or otherwise impermissible purpose, *see Guzman, 926 F.3d at 1000* (stating that balancing under Rule 403 still applies to res gestae evidence); *Redd, 81 F.4th at 828* (counseling exclusion of evidence used "to suggest decision on an improper basis" or "to divert the jury's attention from the material issues in the trial"), Defendants must assert timely objections.

### C. Summary of Motions in Limine Rulings

To summarize, the Court rejects Defendants' timeliness challenges to the Government's expert witnesses, non-expert witnesses, and exhibit evidence for want of "real prejudice." In addition, the Court concludes that the Government may offer evidence of Defendants' gang affiliation, of Baling Dat's former incarceration, and of Defendants' prior possession of firearms as res gestae or intrinsic evidence. The Government argues alternatively, and largely as an afterthought, that much of this evidence "should be permitted under FRE 404(b) to provide context for the search warrant and to prove codefendants' motive, intent, and absence of mistake." Filing 297 at 10. The Court need not reach this argument because it concludes that this evidence is admissible as res gestae. *See United States v. Dunn, 76 F.4th 1062, 1067 (8th Cir. 2023)* (stating that res gestae is "not governed by Rule 404(b)"). However, if this evidence were not properly considered res gestae, this evidence would likely be admissible to "prov[e] motive, opportunity,

intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident" under Rule 404(b). Thus, the Government's Motion in Limine, Filing 297, is granted.

Furthermore, all categories of evidence to which Defendants object in their Motions in Limine, *see* Filing 251; Filing 267; Filing 288; Filing 301; *see also* Section IV.B.1. (the Court's reformatting of Defendants' challenged categories of evidence), fall into the category of intrinsic evidence. Because this evidence is all admissible as res gestae, Defendants' motions in limine are denied. Nevertheless, the Government may not use this evidence for non-res gestae purposes or "to suggest decision on an improper basis" or "to divert the jury's attention from the material issues in the trial." *Redd*, 81 F.4th at 828.

Finally, Defendants at times argue that information that may be admissible against their codefendants is not also admissible against themselves. *See, e.g.*, Filing 252 at 18 (Dilang Dat arguing, "While some of [the content obtained from defendants Baling Dat and Jock's phones] may be admissible at trial against Baling and/or Jock, such a conclusion does not render the same evidence admissible against Dilang."). To the extent the Government offers evidence that is admissible against fewer than all Defendants in this case, the jury will be instructed to consider the evidence only as to the defendants against whom the evidence is admissible if an instruction is properly requested by such defendant with an appropriate proposed jury instruction submitted to the Court. *See Proto*, 91 F.4th at 932 (noting that "'the jury is expected to follow instructions in limiting this evidence to its proper function,' and 'limiting instructions on this subject are no more difficult to comprehend or apply than those upon various other subjects'" (quoting *Spencer*, 385 U.S. at 562-63)).

32

## V. CONCLUSION

For the reasons stated above, defendant Baling Dat is not entitled to additional time to file a Motion to Sever because such Motion would be meritless. Defendant Jock is entitled to have his subpoena quashed, but his challenged affidavit is admissible. In addition, the three categories of evidence that the Government seeks to introduce is admissible as res gestae or intrinsic evidence, or alternatively, as Rule 404(b) evidence. Because Defendants' motions in limine object to categories of evidence may be used as intrinsic evidence, these motions are denied. Accordingly,

IT IS ORDERED:

1. Defendant Baling Dat's Motion to Enlarge Time to File a Motion to Sever, Filing 286, is denied;

2. Defendant Jock's Motion to Quash Subpoena, Filing 312, is granted;

3. Defendants' Motions in Limine, Filing 251; Filing 267; Filing 282; Filing 288; Filing 292; Filing 301; Filing 305, are denied; and

4. the Government's Motion in Limine, Filing 297, is granted.


Dated this 15th day of August, 2024.

BY THE COURT:

Brian C. Buescher
United States District Judge